JAMES M. MALONEY (514252)
Attorney for Plaintiffs
33 Bayview Avenue
Port Washington, New York 11050
Telephone: (516) 767-1395
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

| | |
|---|---|
| DARK STORM INDUSTRIES LLC, BRIAN DOHERTY, and KEVIN SCHMUCKER, | **CIVIL COMPLAINT** |
| Plaintiffs, | Case No.: 1:20-CV-0360 (LEK/ATB) |
| - against - | |
| ANDREW CUOMO, in his official capacity as Governor of the State of New York, EMPIRE STATE DEVELOPMENT CORPORATION, and ELIZABETH RUTH FINE, ESQ., | |
| Defendants. | |

------------------------------------------------------------------------X

Plaintiffs, by their attorney, JAMES M. MALONEY, as and for their Complaint against the above-named Defendants, allege as follows:

## INTRODUCTION

1. This action seeks declaratory judgment and injunctive relief against persons acting under color of state law in their regulation of business activities in the State of New York in response to the current Coronavirus (COVID-19) pandemic, such regulation being in derogation of the federal constitutional rights of the plaintiffs herein and of many other similarly situated persons within the State. Specifically, this action seeks redress against a series of Executive Orders that, as implemented, prevent federal firearms licensees from doing business with ordinary citizens in New York, and that consequently also prevent such citizens from acquiring rifles, shotguns, ammunition, and other equipment for the defense of their homes, a basic human right that is recognized under federal law. *District of Columbia v. Heller*, 554 U.S. 570 (2008).

**PARTIES AND RELEVANT FACTS RELATING TO EACH**

2. At the commencement of this action and at all times hereinafter mentioned, Plaintiff DARK STORM INDUSTRIES LLC ("DSI") was and is a limited liability corporation formed and existing under the laws of the State of New York. DSI is fully licensed under federal and state law to engage in the business of selling[1] firearms[2] and ammunition in the State of New York, and has a principal place of business in New York. As a result of the complained-of Executive Orders, DSI can no longer transact business with ordinary citizens in New York under threat of a fine of up to $10,000 that could be imposed by State authorities for doing so.

3. At the commencement of this action and at all times hereinafter mentioned, Plaintiff BRIAN DOHERTY ("DOHERTY") was and is a natural person and a citizen of the United States and of the State of New York residing in the County of Suffolk in the State of New York. DOHERTY does not currently own any rifles or shotguns (collectively, "long guns") or handguns, nor does anyone he resides with own any long guns or handguns. DOHERTY,

---

[1] In part because it is so highly regulated, and in part because home defense plans cannot be evaluated as a "one-size-fits-all" set of considerations, the sale of firearms (whose definition for purposes of this pleading is qualified in the next footnote), is a service rather than a simple sale of goods. In contrast to the sale of such items as butter or paper towels, a law-abiding and conscientious seller of firearms must evaluate the prospective purchaser's individual qualifications, both legal and technical, as well as such considerations as the location and characteristics of the home to defended (including who resides there, points of entry, etc.), and thus performs services to the prospective purchaser that far exceed those associated with most other sales of goods.

[2] The term "firearm" as used herein is meant to convey its ordinary meaning and not that conveyed in the statutory definition of that term as set forth in New York Penal Law § 265.00(3) ("'Firearm' means (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon . . .").

desiring to acquire a long gun for home defense, contacted DSI about purchasing a long gun prior to the restrictions complained of herein having put in place.  DOHERTY still desires to purchase a long gun for home defense but cannot do so due to the restrictions complained of herein.  DOHERTY is not barred from owning a long gun by any other provision of law other than the restrictions complained of herein.

  4. At the commencement of this action and at all times hereinafter mentioned, Plaintiff KEVIN SCHMUCKER ("SCHMUCKER") was and is a natural person and a citizen of the United States and of the State of New York residing in the County of Suffolk in the State of New York.  SCHMUCKER does not currently own any long guns or handguns, nor does anyone he resides with own any long guns or handguns.  SCHMUCKER, desiring to acquire a long gun for home defense, purchased a shotgun from DSI on or about March 19, 2020.  DSI utilized the National Instant Criminal Background Check System ("NICS")[3] prior to making said shotgun available to SCHMUCKER.  The NICS response was delayed such that the indication that SCHMUCKER was eligible to purchase the shotgun did not reach DSI until after restrictions complained of herein were put in place,  Due to these restrictions, DSI cannot legally deliver to SCHMUCKER the shotgun that he purchased.  SCHMUCKER desires to gain possession immediately of the shotgun that he purchased for home defense but cannot do so now due to the restrictions complained of herein.  SCHMUCKER is not barred from owning a long gun, including the shotgun he purchased, by any other provision of law other than the restrictions complained of herein.

---

[3] Mandated by the Brady Handgun Violence Prevention Act (Brady Act) of 1993, Public Law 103-159, the National Instant Criminal Background Check System was established for Federal Firearms Licensees, of which DSI is one, to determine by telephone or other electronic means whether the transfer of a firearm to a given individual would be in violation of Section 922 (g) or (n) of Title 18, United States Code, or in violation of state law.

5. At the commencement of this action and at all times hereinafter mentioned, Defendant ANDREW CUOMO ("CUOMO") is a natural person and is the Governor of the State of New York. He is sued herein in his official capacity only.

6. At the commencement of this action and at all times hereinafter mentioned, Defendant EMPIRE STATE DEVELOPMENT CORPORATION ("ESD") was and is a business corporation formed and existing under the laws of the State of New York with authority to determine which are "essential services" delegated to it under New York's Executive Order No. 202.6, one of the Executive Orders complained of herein. As such, it is a person acting under color of state law pursuant to authority delegated by the Governor.

7. At the commencement of this action and at all times hereinafter mentioned, Defendant ELIZABETH RUTH FINE, ESQ. ("FINE") was and is a natural person employed or contracted by ESD, and was the person who made the final determination, as to Plaintiff DSI, that the sale of firearms and ammunition to ordinary citizens is not an "essential service" as contemplated by the Executive Orders complained of herein.

## JURISDICTION AND VENUE

8. This action arises under the Constitution of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and has the power to render the declaratory judgment and injunctive relief sought herein pursuant to the provisions of 28 U.S.C. §§ 2201-2202. This action is brought against persons acting under color of state law pursuant to the provisions of 42 U.S.C. § 1983.

9. Venue is properly placed in this Court pursuant to 28 U.S.C. § 1391(b).

## THE EXECUTIVE ORDERS AND THEIR IMPLEMENTATION

10. Beginning on March 7, 2020, Defendant CUOMO issued a series of Executive Orders in response to the Coronavirus pandemic, the first of which was Executive Order 2020, declaring a state of emergency in the State of New York.

11. Subsequent Executive Orders in connection with the declared emergency were numbered with integers following a decimal point, i.e., Executive Order 202,1, 202,2, etc.

12. In Executive Order No. 202.6 ("EO 202.6"), signed on March 18, 2020, Defendant CUOMO set forth the following provisions:

> Effective on March 20 at 8 p.m.: All businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 50% no later than March 20 at 8 p.m. Any essential business or entity providing essential services or functions shall not be subject to the in-person restrictions. This includes essential health care operations including research and laboratory services; essential infrastructure including utilities, telecommunication, airports and transportation infrastructure; essential manufacturing, including food processing and pharmaceuticals; essential retail including grocery stores and pharmacies; essential services including trash collection, mail, and shipping services; news media;  banks and related financial institutions; providers of basic necessities to economically disadvantaged populations; construction; vendors of essential services necessary to maintain the safety, sanitation and essential operations of residences or other essential businesses;  vendors that provide essential services or products, including logistics and technology support, child care and services needed to ensure the continuing operation of government agencies and provide for the health, safety and welfare of the public;
>
> Any other business may be deemed essential after requesting an opinion from the Empire State Development Corporation, which shall review and grant such request, should it determine that it is in the best interest of the state to have the workforce continue at full capacity in order to properly respond to this disaster. No later than 5 p.m. on March 19, 2020, Empire State Development Corporation shall issue guidance as to which businesses are determined to be essential.

13. Defendant ESD is a business corporation and, as such, is a "person" subject to the provisions of 42 U.S.C. § 1983.

14. Because of the delegation of sovereign authority contained in EO 202.6 as set forth at paragraph 12, above Defendant ESD acted under color of state law as contemplated by the provisions of 42 U.S.C. § 1983.

15. Alternatively, if Defendant ESD is not a person acting under color of state law as contemplated by the provisions of 42 U.S.C. § 1983, Defendant FINE is such a person in the context of the actions complained of herein.

16. Promptly after the promulgation of EO 202.6 as set forth at paragraph 12, above, Plaintiff DSI requested an opinion from Defendant ESD as to whether it was a business that may be deemed "essential."

17. On or about March 21, 2020, Plaintiff DSI received the following response by email from Defendant ESD (emphasis added):

> Dear Business Owner:
>
> Thank you for seeking designation as an "essential business" pursuant to the revised New York State Executive Order 202.6 with respect to your business function of firearm and ammo supply.  Based on the information you have provided, that business function is an essential business and/or supports an essential business and is not subject to the required 100% workforce reduction pursuant to the revised Executive Order 202.6. *However, your business has been designated as essential solely with respect to work directly related to police and / or national defense matters are exempt from current restriction. Only those employees can be present at the business location in support of essential business activities. No other employees/personnel shall be permitted to work from your business's location.* Any other business activities being completed at your location that are not essential are still subject to the revised Executive Order 202.6. Please continue to comply with all other Executive Orders and recommendations from the New York State Department of Health and please consider reducing your workforce to the extent practicable.

18. On or about March 21, 2020, Plaintiff DSI sought clarification from Defendant ESD

by email, writing: "So to be clear we may continue to conduct business with law enforcement and military but not civilians?"

19.  On or about March 22, 2020, Defendant ESD responded by email to the query in the foregoing paragraph by email, writing: "Yes that is correct as advised by counsel."

20.  Upon information and belief, the person who made the final determination as set forth at paragraphs 17 and 19, above, was Defendant FINE.

21.  Defendants ESD and/or FINE set an official policy in making the determinations set forth at paragraphs 17 and 19, above.

22.  Executive Order No. 202.8 ("EO 202.8") was promulgated under the authority of Defendant CUOMO on or about March 20, 2020.

23.  It is to the provisions of EO 202.8 that Defendant ESD refers in its response set forth at paragraph 17, above, when referencing "the required 100% workforce reduction pursuant to the revised Executive Order 202.6."

24.  Under EO 202.8, all employers not providing "essential services" were required to reduce their workforce by 100% (i.e., to zero) by March 22, 2020, at 8 p.m., which for most enterprises including Plaintiff effectively meant closing the business and ceasing to engage in commerce.

25.  Plaintiff DSI is prohibited by EO 202.8 and the opinion as set forth at paragraph 17, above, from keeping its business open to serve the needs of its ordinary (i.e,. non-police or national defense) customers.

26.  EO 202.8 and its predecessor executive orders recognize many "essential services or functions" that may remain open even while others must close, with such  "essential services or functions" including those needed to "maintain the safety, sanitation and essential operations of

residences or other essential businesses."

27. The provision of rifles, shotguns, ammunition, and other equipment for the defense of homes is a service needed to "maintain the safety, sanitation and essential operations of residences," especially at this critical juncture in history, when unprecedented economic inequalities are likely to develop that will substantially, inevitably and foreseeably increase the rate of crimes as burglaries and robberies committed in homes.

28. But for the Executive Orders complained of herein and their interpretation as hereinbefore described, Plaintiff DSI would continue to do business following appropriate medical and public health recommendations (e.g., cleaning, social distancing) and would thereby be able to meet the demands (which have increased during the pandemic crisis) of citizens legitimately wishing to purchase long guns, other weapons, and ammunition for home defense. As the situation now stands, Plaintiff DSI cannot meet any of these demands and Plaintiffs DOHERTY and SCHMUCKER cannot acquire the long guns they have been seeking to obtain.

## FIRST CAUSE OF ACTION

29. Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs 1 through 28 as if fully set forth herein.

30. The Executive Orders complained of herein and their interpretation as hereinbefore described, in that said orders and their implementation by Defendants deprive American citizens residing in New York of their ability to purchase arms for the defense of their homes, infringe upon the rights of Plaintiffs and other citizens of New York as conferred by the Second Amendment to the Constitution of the United States and incorporated as against the states through the Fourteenth Amendment to the Constitution of the United States.

**SECOND CAUSE OF ACTION**

31. Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs 1 through 28 as if fully set forth herein.

32. The Executive Orders complained of herein and their interpretation as hereinbefore described, in that said orders and their implementation by Defendants deprive American citizens residing in New York of their ability to purchase arms for the defense of their homes, infringe upon the rights of Plaintiffs and other citizens of New York as guaranteed under Article IV, section 2 of the Constitution of the United States.

**THIRD CAUSE OF ACTION**

33. Plaintiffs repeat and reallege each and every allegation set forth in the foregoing paragraphs 1 through 28 as if fully set forth herein.

34. The Executive Orders complained of herein and their interpretation as hereinbefore described, in that said orders and their implementation by Defendants deprive American citizens residing in New York of their ability to purchase arms for the defense of their homes in this time of crisis and uncertainty, which is a fundamental and natural right, infringe upon the rights of Plaintiffs and other citizens of New York as guaranteed under the doctrine of substantive due process recognized by the United States Supreme Court of the United States in its precedent interpreting the Constitution of the United States.

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) assume jurisdiction over this action;
(2) declare that New York's Executive Order No. 202.8 and its predecessor executive orders, as implemented, to the extent that it prevents federally licensed sellers of firearms from doing business with ordinary citizens in New York and prevents such citizens from acquiring rifles, shotguns, ammunition, and other equipment for the defense of their homes, is unconstitutional and of no force and effect;
(3) grant appropriate equitable relief, including a temporary restraining order, and temporary and permanent injunctions (as needed) ordering Defendants to allow DARK STORM INDUSTRIES LLC to remain open for business as an "essential service" with an adequate workforce enabling it to sell rifles, shotguns, ammunition, and other equipment to ordinary law-abiding New York citizens for the defense of their homes;
(4) award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and
(5) grant such other, further, and different relief as this Court may deem just and proper.

Dated: March 30, 2020
Port Washington, New York

/s

JAMES M. MALONEY (514252)
Attorney for Plaintiffs
33 Bayview Avenue
Port Washington, New York 11050

(516) 767-1395
maritimelaw@nyu.edu