UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
DARK STORM INDUSTRIES LLC, BRIAN
DOHERTY, and KEVIN SCHMUCKER,

                                        Plaintiffs,

                    - against -

                                                        **1:20-cv-00360 (LEK) (ATB)**

ANDREW CUOMO, in his official capacity as
Governor of the State of New York, EMPIRE STATE
DEVELOPMENT CORPORATION, and
ELIZABETH RUTH FINE, ESQ.,

                                        Defendants.
---------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

James M. Maloney (514252)
Attorney for Plaintiffs
33 Bayview Avenue
Port Washington, New York 11050
Telephone: (516) 767-1395
maritimelaw@nyu.edu

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF FACTS AND OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT I

ESD CAN BE SUED UNDER 42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT II

ESD's DETERMINATION VIOLATES THE SECOND AMENDMENT . . . . . . . . . . . . . . . . 9

POINT III

THIS ACTION, AND PARTICULARLY THIS MOTION, ARE JUSTICIABLE
UNDER THE DECLARATORY JUDGMENT ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

<u>Cases</u>

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*
531 U.S. 288 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*District of Columbia v. Heller*
554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Dow Jones & Co. v. Harrods Ltd.*
346 F.3d 357 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Dow Jones & Co. v. Harrods Ltd.*
237 F. Supp.2d 394 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Duncan v. Becerra*
265 F. Supp. 3d 1106, 1117 (S.D. Cal. 2017)
*aff'd* 742 Fed. App'x 218 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ezell v. City of Chicago*
651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Illinois Ass'n of Firearms Retailers v. City of Chicago*
961 F. Supp. 2d 928 (N.D. Ill. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jackson v. City & County of San Francisco*
746 F.3d 953 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jackson v. Metropolitan Edison Co.*
419 U.S. 345 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Korematsu v. United States*
323 U.S. 214 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*
312 U.S. 270 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McDonald v. City of Chicago*
561 U.S. 742 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Public Serv. Comm'n of Utah v. Wycoff Co.*
344 U.S. 237 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Thomas v. Union Carbide Agric. Prod. Co.*
473 U.S. 568 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Time, Inc. v. Regan*
539 F. Supp. 1371 (S.D.N.Y. 1982)
*aff'd in part, rev'd in part, Regan v. Time*, 468 U.S. 641 (1984) . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Couto*
311 F.3d 179 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wilton v. Seven Falls Co.*
515 U.S. 277 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Youngstown Sheet & Tube Co. v. Sawyer*
343 U.S. 579 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## Statutes

18 U.S.C. § 922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 . . . . . . . . . . . . . . . . . . . . . 5, 11-13

SAFE Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

iii

PRELIMINARY STATEMENT

This memorandum of law is submitted in support of Plaintiffs' motion for partial summary judgment, which has been brought by Order to Show Cause for the reasons stated in the Declaration of James M. Maloney ("Maloney Dec.") at ¶¶ 6-11.  The only relief sought in the instant motion is a brief and succinct judicial declaration that a certain determination recently made by a New York business corporation under delegated sovereign authority is unconstitutional and of no force and effect.

STATEMENT OF FACTS AND OF THE CASE

This action, brought pursuant to the provisions of the Declaratory Judgment Act and of 42 U.S.C. § 1983, seeks, *inter alia*, declaratory judgment against persons, including and especially a New York business corporation (i.e., an artificial person) acting under color of state law as part of New York's response to the current Coronavirus (COVID-19) pandemic, such state action being in this instance in derogation of the federal constitutional rights (including and especially the Second Amendment rights) of the Plaintiffs herein and of many other similarly situated persons within the State.

Specifically, this action, and particularly the instant motion, seek redress against the determination made by Defendant EMPIRE STATE DEVELOPMENT CORPORATION ("ESD")[1] to the effect that federal firearms licensees in New York are "non-essential" in

---

[1] Empire State Development Corporation ("ESD") is a New York business corporation.  See Exhibit 5 to the Declaration of James M. Maloney ("Maloney Dec.") submitted herewith.  Under Executive Order 202.6, ESD was conferred authority to determine whether it is in the "best interest of the state" to have a given business's workforce continue and to issue "guidance as to which businesses are determined to be essential."  See Exhibit 3 to Maloney Dec. (closing paragraph).  Accordingly, sovereign authority was conveyed to ESD under Executive Order 202.6 and its actions in that capacity are state actions.  This will be discussed in Point I, *infra*.

connection with their doing business with ordinary citizens in New York.  The practical

consequence of this determination is that citizens statewide, including the individual plaintiffs

herein, are wholly prevented from acquiring rifles, shotguns, ammunition, and other equipment

for the defense of their homes, which is a basic human right recognized under federal law.

*District of Columbia v. Heller*, 554 U.S. 570 (2008).

There can be no genuine dispute as to the essential material facts necessary to decide this

motion, which are articulated separately in the Statement of Material Facts submitted herewith.

As described in footnote 1, *supra*, ESD was specifically delegated authority to make the

complained-of determination by an Executive Order of the Governor of New York.  Although

Defendants have, in their Answer (DE #12, submitted herewith as Exh. 2 to the Maloney Dec.),

denied "that ESD can be sued under 42 U.S.C. § 1983," *see id.* at ¶ 14, that is a mixed question of

fact and law, and it is respectfully submitted that the dispute between the parties on this issue is

not one not at all of fact but completely of law.

The full effect of ESD's determination on citizens' ability to acquire firearms in New

York can only be understood in the context of the background-check and other regulatory

requirements of New York and federal law.  Federal law requires all retail firearm purchases to

occur through a federally licensed firearm dealer, and the sale generally must be consummated

"in person at the licensee's business premises."[2]  18 U.S.C. § 922(a)(1)(A), (c).  Under New

York's SAFE Act, all private handgun, rifle or shotgun sales or transfers in New York (with the

---

[2] In a letter dated April 10, 2020, from the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives, to federal firearms licensees, a true copy of which is annexed as Exhibit 1 to the Declaration of Peter Morrisey ("Morrisey Dec."), it was clarified that firearm sales and deliveries could legally occur "exterior to the brick-and-mortar structure" at which the licensed dealer is located.  The Department of Homeland Security had earlier classified firearms dealers as "essential."  *See id.*

exception of those sales or transfers to and between certain family members) require a

background check of the buyer.  Therefore, consumers can purchase firearms only from federally

licensed dealers capable of performing an NICS background check.  Thus, ESD's determination,

by deeming firearms dealers "non-essential," has made it virtually impossible for ordinary

citizens to acquire firearms legally[3] from any source other than licensed dealers, who, in turn, are

barred from maintaining any personnel on their premises to conduct business with the general

public, and accordingly must close their doors to them.


ARGUMENT

POINT I

ESD CAN BE SUED UNDER 42 U.S.C. § 1983

In *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288

(2001), the Supreme Court wrote:

> [T]he deed of an ostensibly private organization or individual is to be treated
> sometimes as if a State had caused it to be performed. Thus, we say that state
> action may be found if, though only if, there is such a "close nexus between the
> State and the challenged action" that seemingly private behavior "may be fairly
> treated as that of the State itself."

*Id*. at 295 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

Here, it is indisputable that ESD was conveyed, very clearly and specifically by Executive

Order 202.6, the authority to make determinations relating to whether it is in the "best interest of

the state" to have a given business's workforce continue and to issue "guidance as to which

---

[3] The consequence that the determination may increase illegal trafficking in firearms as formerly law-abiding New Yorkers seek to arm themselves in the face of a crisis should not be overlooked by this Court.

businesses are determined to be essential."  See citations provided in footnote 1, *supra*.  Given

such an express delegation of authority, ESD, in taking actions on those specifically delegated

tasks, should be "fairly treated as that of the State itself."  There exist the requisite "close nexus

between the State and the challenged action."  Indeed, to hold otherwise would be to condone a

methodology for a sort of sovereign-authority shell game in which the State could delegate power

to an entity that cannot be sued under 42 U.S.C. § 1983 for deprivations of constitutional rights.

It is worth noting that in Defendants' Answer, they have conceded that any actions taken

by the individual Defendant, ELIZABETH RUTH FINE, ESQ. ("FINE"), who is believed to

have made the determination, *was* state action, admitting specifically "that any actions taken by

defendant Elizabeth Fine as an employee of ESD in regard to the subject Executive Orders were

under color of State Law."  Answer, Exh. 2 to Maloney Dec., at ¶ 15.  But since Defendants have

also denied that FINE actually made the determination, *see id.* at 20, a genuine dispute of

material fact prevents Plaintiff's making FINE a subject of this partial summary judgment

motion.  Nevertheless, the logical inconsistency of the statement with the prior one denying "that

ESD can be sued under 42 U.S.C. § 1983," *see id.* at ¶ 14, is striking.  Presumably Defendants'

position is that if an employee of ESD was the final decisionmaker, ESD could not be sued under

a *respondeat superior* theory (unavailable in § 1983 cases), but that is emphatically not the

theory Plaintiffs are urging here, which is, rather, that ESD is *directly amenable to suit* under §

1983 because, having been expressly delegated authority by the State to act in this specific

instance, its "behavior may be fairly treated as that of the State itself," *Brentwood, supra*.

POINT II

ESD's DETERMINATION VIOLATES THE SECOND AMENDMENT

The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."   The Supreme Court has held that this constitutional provision "protect[s] an individual right to use arms for self-defense," *District of Columbia v. Heller*, 554 U.S. 570, 616 (2008), and that because "the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty," it applies to the States via the Fourteenth Amendment, *McDonald v. City of Chicago*, 561 U.S. 742, 778, 791 (2010) (plurality opinion).

Likewise. the Second Amendment "protect[s] an individual right to use arms for self-defense," and "takes certain policy choices off the table." *Heller*, 554 U.S. at 616, 636.  In *Heller*, it was the complete prohibition on handguns that made the policy choice untenable. Here, ESD's determination has amounted to a policy choice (it was delegated authority to determine whether it is in the "best interest of the state" to have a given business's workforce continue), and one which goes even further than the ban at issue in *Heller* because it makes any and all legal acquisition of firearms and ammunition impossible.

As federal courts have repeatedly recognized, the "right to possess firearms for protection implies . . . corresponding right[s]" without which "the core right wouldn't mean much." *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) (addressing right to train with firearms). And the right to keep and bear arms would mean little indeed without the corresponding right to acquire arms in the first place.  Indeed, if the right to possess a firearm is to have any meaning, it necessarily must include the right to *acquire* a firearm, which makes the right of acquisition the most fundamental prerequisite of legal gun ownership. *See Illinois Ass'n of Firearms Retailers*

*v. City of Chicago*, 961 F. Supp. 2d 928, 930, 938 (N.D. Ill. 2014).  Correspondingly, "without bullets, the right to bear arms would be meaningless." *Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014).  Courts have consistently held that "the right to possess firearms for protection implies a corresponding right to obtain the bullets necessary to use them." *Id*. (internal quotation marks omitted); see also *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1117 (S.D. Cal. 2017), *aff'd* 742 Fed. App'x 218 (9th Cir. 2018) ("Without protection for the closely related right to keep and bear ammunition magazines for use with the arms designed to use such magazines, the Second Amendment would be toothless.") (internal quotation marks omitted)).

Nor does the fact that these measures have been undertaken during a national emergency soften or lessen the constitutional significance of ESD's determination.  As Justice Robert Jackson wrote in his concurrence in the famous *Steel Seizure Case*, the drafters "knew what emergencies were, knew the pressures they engender for authoritative action, [and] knew, too, *how they afford a ready pretext for usurpation*." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 650 (1952) (Jackson, J., concurring) (emphasis added).

Whether ESD's determination was a pretext to usurp the Second Amendment rights of New Yorkers is not a question this Court need reach.  At the current juncture, it need only find and declare that ESD's determination, which has had the effect of completely preventing New Yorkers from acquiring arms and ammunition during this time of crisis, is violative of the Second Amendment.

POINT III

THIS ACTION, AND PARTICULARLY THIS MOTION, ARE
<u>JUSTICIABLE UNDER THE DECLARATORY JUDGMENT ACT</u>

In addition to having been brought under the provisions of § 1983, this action was brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  The relief sought in this motion is an interim-relief declaratory judgment of sorts, appropriate because of: (1) the emergency nature of the motion; (2) the existence of disputed material facts not germane to the motion (e.g., whether Defendant FINE made the determination at issue); and—perhaps most importantly—(3) the *sui generis* nature of the situation at hand and the likelihood that a short declaration of the unconstitutionality of ESD's determination could, as a practical matter, end the controversy, restore the rights of New York's citizens, and result in reasonable accommodations being made to allow those citizens to acquire firearms legally as the current crisis unfolds and, hopefully, abates.

Accordingly, a brief discussion of the Declaratory Judgment Act and its application to the matter at hand is in order.

The Declaratory Judgment Act invests the district courts with discretionary authority to exert jurisdiction over an action in which a plaintiff seeks declaratory relief.  ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 USC § 2201 (a).  In considering whether to exercise this authority, a district court in this Circuit must compare the facts at issue against the two-prong standard adopted by the Second Circuit, to determine whether (1) a declaratory judgment in the case before it would serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether the judgment would finalize the controversy and offer relief from uncertainty.  *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-360 (2d Cir. 2003).

Here, the above standard is met particularly aptly in the context of the motion itself, because a succinct declaration from this Court indicating the ESD's determination violates the Second Amendment would almost certainly result in a prompt reevaluation of that determination and may well finalize the controversy at this very early stage of litigation.

Three basic considerations must be examined by the court when deciding whether to exercise the discretionary authority granted by the Act. First, does the action set forth in the pleadings raise an "actual controversy?" Second, does the case come within the ambit of cases for which the Act was intended? And third, are there circumstances present in this case that render it sufficiently compelling to induce the Court to exercise this discretionary authority? *See Dow Jones & Co. v. Harrods Ltd.*, 237 F. Supp.2d 394 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003). It is submitted that all three questions are to be answered in the affirmative here.

As to justiciability, actions brought under the Declaratory Judgment Act are justiciable if, and only if, there is an "actual controversy" presented by the facts of the case. 28 U.S.C. § 2201 (a). This mirrors the criteria examined when determining whether a particular case satisfies the "case or controversy" requirement giving rise to federal court jurisdiction derived from Article III of the United States Constitution. "The judicial power does not extend to abstract questions. . . . [C]laims based merely upon assumed potential invasions of rights are not enough to warrant judicial intervention." *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241- 42 (1952). The court should examine whether the facts as alleged by plaintiff support the notion that there exists between the parties a "substantial controversy" of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). It is beyond dispute that such a controversy exists here, and the "immediacy and reality" of this one make it particularly apt for resolution by means the instant motion seeking a declaration.

The justiciability analysis also necessarily looks at whether the issue that the plaintiff

12

brings before the federal court is ripe for its intervention.  If the legal consequence feared by the plaintiff seeking declaratory relief merely is a possibility, or even a probability based on the occurrence of some future event that may not occur, the case is not ripe for federal court review and the court should refrain from invoking its discretionary authority under 28 U.S.C. § 2201(a). See *Dow Jones & Co. v. Harrods Ltd.*, 237 F. Supp. 2d 394 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003) (*citing Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985)). Again, the current situation is far from speculative: gun stores around the State remain closed while those in other states remain open in response to the same crisis.

Finally, 28 U.S.C. § 2201 does not act as an independent source of jurisdictional power for the federal courts — rather, it may only be utilized where the federal court already possesses subject matter jurisdiction over the issues before it. *Time, Inc. v. Regan*, 539 F. Supp. 1371, 1373 (S.D.N.Y. 1982), *aff'd in part, rev'd in part, Regan v. Time*, 468 U.S. 641 (1984).  Here, the Court has independent subject matter jurisdiction over this case involving deprivation of federal rights by state actors.  The aforementioned discretionary authority granted by 28 U.S.C. § 2201(a) is reviewed very deferentially on appeal, and generally will be set aside only where the lower court is found to have abused its discretion by basing its ruling on a mistake in law or fact. *See Dow Jones*, 346 F.3d at 359-360 (2d Cir. 2003) (*citing Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995) and *United States v. Couto*, 311 F.3d 179, 185 (2d Cir. 2002)).

Again, these considerations favor the Court's undertaking to resolve this matter promptly and efficiently by rendering the requested partial summary judgment as a form of interim relief that may indeed end the controversy.  Indeed, the simplicity of the law and the certainty of the few facts at issue should make that a relatively uncomlicated undertaking.

CONCLUSION

This partial summary judgment motion, which Plaintiff hopes will result in a prompt and succinct judicial declaration as to the unconstitutionality of ESD's determination, may and should trigger a change in thinking on the part of that corporation and its personnel that quickly restores the rights of New Yorkers while still safeguarding their health during this crisis. Although this motion may thereby end the controversy, it is also possible that it will not, and Plaintiffs wish to note in closing that they have not waived any of the other arguments or legal theories put forth in their Complaint that are not addressed here.

More appropriate to note in closing, however, are Justice Jackson's dissenting words in the famous *Korematsu* case:

> All who observe the work of courts are familiar with what Judge Cardozo described as "the tendency of a principle to expand itself to the limit of its logic." A military commander may overstep the bounds of constitutionality, and it is an incident.  But if we review and approve, that passing incident becomes the doctrine of the Constitution.  There it has a generative power of its own, and all that it creates will be in its own image.  Nothing better illustrates this danger than does the Court's opinion in this case.

*Korematsu v. United States*, 323 U.S. 214, 246 (1944) (Jackson, J., dissenting).

For all of the foregoing reasons, and perhaps especially this last, this motion should be GRANTED.

James M. Maloney
May 12, 2020